I AM AN INNOVATOR Good morning, Your Honors. May it please the Court, Avantika Rao, Appearing Correspondent, Ms. Alianz, Sylvie, Wemming, and Cohn. I would like to reserve two minutes for rebuttal, Your Honors. Okay. Just keep your eye on the clock. Your Honors, this case is about a Cameroonian woman of the Bamileke ethnicity who became active as a student activist with the Democratic Social Front or SDF party. She was twice detained and maltreated, was raped while rendered unconscious, and finally was attacked at her family's house. She is now a contributing member of our society. She is a teacher in the Pasadena Unified School District. We are here today because we seek reversal of the IJ's frivolous finding and remand on the issue of asylum, given the substantial harm caused by the IJ's numerous errors. There were three main areas of error. First, the IJ's frivolous finding. The regulations state that an asylum filing may be found to be frivolous if any of its material elements is deliberately fabricated. And the Fifth Circuit has stated in Rodriguez-Gutierrez, which is at 59 F504, a finding that testimony lacked credibility does not alone justify the conclusion that false testimony has been given. The IJ came real close to finding the arrest warrant to be a fabricated document. And you did not mention that as part of what she had suffered. What is the status of the arrest warrant in your mind in the frivolousness finding and as it also relates to the underlying credibility finding? That's right, Your Honor. It was a crucial point of evidence. As it stood on the record, the IJ stated at two different locations what he thought of the arrest warrant and the respondent's testimony. At one point, he called it highly suspect in his words. And at another point, however, he said that, quote, is it 562? Quote, I can't for sure prove that she's falsely testifying, but I don't think that's what I have to do, end quote. He thereby admitted that he had not satisfied the deliberate fabrication test. He mistook the standard required of him, Your Honor. The, I don't know. So you're saying he would have had to make a specific finding that it was fabricated to support the frivolousness? I would argue that, too, there was the fabrication issue that he did not reach. He said it was an opportunity to submit the original for forensic testing, and their conclusion was inconclusive. So there was no, the service had not made any finding that it was not authentic or that it was altered in any way. So I think that once respondent proffered the document, turned it over to the service, the service, and at that point, respondent had already also proffered a letter about the origins and the chain of custody of the document, that once the service had it in its possession and came back with a finding that it was inconclusive as to its authenticity, that that was the end of respondent's burden. Okay. He did, he said a little more than what you've said. He said, not that it was only highly suspect, but he said that the bulk of the evidence seems to show that this is a And then he talks about given the real possibility of fabrication and embellishment. So your argument is that unless he made the finding absolutely that it was a fabrication, then it can't be used to support the frivolous finding. Yes, Your Honor. The relevant word I would point out is that given the real possibility, possibility is very different from a finding. He did this in the context, he did this in the context of finding her not credible. He did it in the context and adopted that in his frivolous finding as well. Right. So he went through the various aspects that indicated to him that she was not credible, and then I would argue that he then substituted that for the deliberate fabrication requirement, a misunderstanding that there was no deliberate, there was no intent to deceive here. I would also point out that Well, Ms. Rao, help me with the transcript. I'm looking at Excerpt of Record 77, where in the course of his written decision, he makes a statement that the respondent to the court at the time that there was no original, referring to the arrest warrant. Then in the very next paragraph, he says, after the recess, respondent surprised everyone in the court by saying that she did have the original and that she had the original in her house here in the United States. Why can't we look at that evidence and conclude that based upon her misrepresentations to the immigration judge that substantial evidence supports his finding that her testimony was not credible without regard to whether or not we need to conclude that the document was a complete fabrication? I would argue that it does not go to the heart of the asylum determination. The production of the original arrest warrant, which she is arguing is the basis for a finding that she's being persecuted because of her political affiliation, when that's the underlying reason for the issuance of the warrant, doesn't the I.J. say that goes to the very heart of her asylum claim here? I would disagree with that, Your Honor. Disagree that the I.J. said it or that that's the correct legal conclusion based on these facts? That's the correct legal conclusion. He did say that. He made that finding. Right. And I would argue that it was submitted, the copy was already submitted into evidence. The content of the document had already been submitted into evidence. What happened to the representation that that was the only copy that was available, that that was it? And then in the very next portion of the trial after the recess, all of a sudden, an original document mysteriously appears in the courtroom. I mean, I would agree that this is an irregular situation. But if you look at what was proffered, it was the copy, and that was submitted, and it was before the court. And she was offered an opportunity, as she's required in the Ninth Circuit, to explain what had happened. And she explains that because her cousin worked for the police office, that's how the cousin was able to get the original. The original was mailed directly to a respondent. The attorney was apparently not aware of that. And as soon as they found out about it, within a few hours that same day, they actually brought the original to the court. I think the reason why it was a change in the testimony was because, on the record, there occurred a discussion about the need for it to be submitted for forensic testing, that it needed to be a certified copy or an original in order to be submitted for forensic testing. I would argue that if it was a fraudulent or fabricated document, why would she volunteer to bring it forward for forensic testing? That would not be in her interest. There was a copy already in the record. The record itself did not change whether it was a copy or an original. I agree that there is a misstatement on the record, but I think that it was explained by her. If we look at the situation with refugees, they often have difficulty, especially when the opposition party is in control of their government. To get an arrest warrant naming you from a law enforcement agency and that government would be almost impossible. It would have put her in danger. Given the situation, it was a logical way for them to procure it. It wouldn't have been logical for them to actually present themselves as the family of the person who was wanted and say, can you please politely ask for a copy of it? That would be our position with regards to that. So I would also... Is there something you want to tell? We have the briefs. So is there something you'd like to say now or do you want to save it for rebuttal? Just one more major area that I'd like to point out is that I.J. substituted his personal conjecture in the area of the sexual assault, her testimony with regard to the rape. And I would encourage that that area be very much a point of your focus. When you look at this record, given the Parmasami case, I would note that this is what he said. The I.J. said it seems, quote, strange that the respondent was, quote, obsessed immediately after the event with going to the doctor to obtain a certificate that would prove she was raped, end quote. And he said that the story does not ring true. He used the fact that she diligently sought help, medical help, and diligently sought certification of the rape against her. And he therefore assumed and speculated that a rape victim would not immediately go and seek out a certificate from a medical professional. That was the speculation that he made. There are also several other omissions that he noted with regards specifically to the sexual assault. That fact that she omitted mention of her pregnancy, that she was hit with a stick. I would argue that in light of seeing in Parmasami that such minor omissions in the context of a sexual assault are not material to the underlying asylum claim. And I would note specifically the paragraph in Parmasami where, that a woman who has suffered sexual abuse at the hands of male officials does not spontaneously reveal the details of that abuse to a male So the situation that she was recounting details of a sexual assault and was not exactly forthcoming about the fact that she was pregnant while she was attacked should not be held against her. And finally, I just point out that the IJ failed to satisfy the Al Harbi requirement put forth by this court. He failed to look at the objective documentary evidence in the record. And under Al Harbi, this can overcome an adverse credibility finding. That's the end of my. Thank you. Good morning. It pleases the court. My name is Sydney Farrier and I'll be representing the Attorney General John Ashcroft in this matter. The standard of review that this court must apply in asylum cases is whether the evidence compels overturning the immigration judge's decision here. And as the Supreme Court has noted and this court has stated, the possibility of drawing too inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. In this case, Petitioner's Counsel does point out numerous alternative readings that the IJ could have come up with or conclusions that he could have reached. Here, however, the immigration judge's decision is supported by legitimate and specific reasons for his finding. He cites about five different areas in support of his decision with numerous specific examples under each. First, he cites the arrest warrant being fabricated. He also cites the inconsistency. No, he didn't say it was fabricated. He avoided saying that. But he said it was highly suspect because he didn't believe that the, was it the brother or the cousin who's the police officer, would actually engage in that kind of hilfering, if you will. Well, what's the basis for that conclusion? Well, I believe that his first problem with the arrest warrant comes up with the fact that, as Judge Hellman was mentioning, she first denied having the original. She said that she only had the copy. She then comes back after a recess and after the importance of submitting the original is explained to her and says,  So what does that go to? She'd already put the copy in. She had the original. Yes, but it just, it plants a seed in the immigration judge's mind. I understand that, but that, so she gives an explanation. But then he goes off on the notion that somehow it's not credible as to how this could have been taken from the files and then engages in this elaborate discussion of how things must operate in Cameroon. I guess I'm not sure. What's the factual basis for his speculation? The factual basis, he doesn't cite anything with the document itself. How could he? But he does cite the timing of the submission. He says that he finds it implausible as to how she says that she comes to know about the warrant, that being that she found out about it in March of 1998, only after she had, only after being informed by her parents, or by her father. And yet the letters from her father, from her sister, which were submitted in 2000, don't make any reference to the arrest warrant. So that, in conjunction with the fact that, he also found a suspect that she wouldn't talk to her parents to learn of this, or to her father to learn of the arrest warrant until about three months after leaving, or two and a half months after leaving Cameroon when she left a young baby with her parents, when she was concerned for their safety. That was why she fled from Cameroon. And then he also found, as you mentioned, he also found that it wasn't plausible that the cousin would have actually stolen the document when that would have put his job and possibly his life at risk. That latter point seems highly speculative to me. That is what I was referring to partially when I say that the court could reach an inconsistent conclusion, but if there is evidence supporting the other person's decision, which the lack of mention in the letters and the various other things that I mentioned provide evidence in support of the IJ's conclusion. The IJ also cites various general inconsistencies. That of the fact that she was able to depart and return to the country many times without any trouble from the Cameroonian government, even though she claimed that she was looked at as a dissenter or an opponent of the government. He also finds within the general inconsistencies that she never mentioned the baby, that she was in fact pregnant when she was raped, and that didn't come up until she had been cross-examined. That is something that it's true that it would be very difficult for her to testify to, probably to a male judge, but the judge did note in his decision that she did give detailed answers to the questions regarding the attacks and that she seemed to be forthcoming. Well, so how does that cut? You just said it's understandable she wouldn't want to testify about a very personal item as a first month of pregnancy. On the other hand, she was forthcoming on everything else. Well, so then that would cut to the fact that why not bring up the fact that she was pregnant? Because you just gave the reason, which is what her counsel is arguing, that a woman who has been raped may have some sensitivities about discussing, particularly with a male judge in a hearing like that circumstance, be forthcoming about everything else. So does the fact that she's reticent, as you argue she might understandably be, destroy her credibility as to the whole incident? Well, that again sheds, raises questions, I guess, but it reasonably raises questions with the immigration judges as to why she wouldn't mention it if she had been forthcoming about every other aspect. I think you're not answering my question. You're the one who started out by saying, candidly, and I appreciate your candor, that this could be something that's quite awkward. So she didn't mention it. She didn't refuse to talk about it when asked, but it wasn't something she felt she needed to volunteer. Right. But I thought that my point was that if that is an embarrassing, or something that you do not want to talk about, but yet you have already spoken about other events regarding that event, why? Well, she may have had some reason for not wanting to admit that she was pregnant at the time. Maybe the circumstances of becoming pregnant were embarrassing to her. Whatever. Who knows? But my point still is, assuming that there was some reason in her mind for doing it, but she was forthcoming about everything else, why does that one admission justify basically finding the entire testimony about the rape not credible? That was one of several things that the immigration judge cited. In fact, he cited that she, within her declaration, she did not mention that she'd been hit with a baton, and yet in her testimony, she does bring that up. There were just several factors that the immigration judge took accumulation to come up with his ultimate finding that, in fact, she lacked credibility on that specific aspect. Ms. Ferrier, could you turn to the frivolous application? I can't find a case in the circuit where we have ever upheld a determination by an administrative law judge. I didn't find one either. Why should this case be the first? Well, I guess there are other cases from other circuits. The two that we cited in our brief from the 11th Circuit, and I believe it is the 5th Circuit, which did, in fact, uphold the frivolous filing conclusion by the immigration judge. In fact, the 5th Circuit was just a determination. The immigration judge made a determination regarding credibility, and then they went on to make the frivolousness finding. In this case, I think because this Court hasn't upheld it before doesn't mean that it shouldn't do so now. The immigration judge did base his finding on... Well, now, wait a minute. The rule says that an asylum application is frivolous if any of its material elements is deliberately fabricated. Now, where is it in this record that there is any finding of deliberate fabrication? The immigration judge, in his decision, which I would also note that opposing counsel, when she was speaking of his vague references, that was not in his actual written or oral decision. Within his oral decision, he says, and this is at page 104 of the record, I do believe that the evidence is replete with fabrication and embellishment. Respondent's testimony and evidence has shown a pattern of being fast and loose with facts in this case. He presented a highly suspect document to attempt to corroborate her case and has done this now. So that was his specific finding with regard to her presenting fabricated information before the court. So based upon that finding, this court can uphold the immigration judge's decision if you find that the evidence... I'm still a little troubled. I mean, I noted those myself, but he says the same reasons mentioned before where he's actually fabricated, now he says for the same reasons I find she has filed a frivolous application. So the same reasons are where he says, I'm going to admit it, but give it little weight. And now he's saying it's entitled to no weight, in effect, because it's a little shaky. He does say that it's replete with fabrication and embellishment, but he doesn't specify, you are correct, that it goes back to the arrest warrant being fabricated. I assume that what he does is he just sits and dictates these orders right after the hearing, and then based on these initials, occasionally he goes back and makes corrections. So he had an opportunity, if he wanted to, to rewrite the earlier portion of his order to make it an affirmative finding that the document was fabricated, but he didn't do that. Well, as I understand the system before the immigration court, you're correct, the immigration judge does render the decision orally from the bench. The transcript, once the decision, if it's appealed, the transcript of the decision is then provided to him. And I think, I'm not sure exactly if it's in the, I don't think it's in the regulations, but the immigration judge is allowed to make corrections that are grammatical. Like a deponent correcting a transcript. They can't make any sort of substantive changes. Well, it says, he writes at the end, he says, transcript of the oral decision reviewed, corrected, and signed without the record of proceedings. And then he dates that. And my understanding is that they don't, this comes to them after the fact, the printed version, and then that's what they do, is go through and edit it. Yeah, once the appeal comes up, then they get the decision. But your understanding is that if he wanted to go back, reading it in print, and say, oh, the first part of this order needs to be stronger if I'm going to support my finding of this particular case. All right. I'll give you a minute for rebuttal. I'd like to first distinguish the two cases, the Fifth Circuit case and the Eleventh Circuit case. These are the previous finding cases. F.A. was a Nigerian who was, who had testified that he was involved with a party in his home country. And he had, quote, under the record, they say, F.A. has gone back and forth with the facts and misrepresented his case several times. He also failed to take advantage of ample opportunity to clarify his contradictory testimony. And this, that was the end of the quote. His testimony wavered as to his involvement with this political party. That was the basis of his asylum claim. So it was the degree to which he had attended meetings, when he had attended meetings, when he had gone to the meetings, when he had gone to the demonstrations. Okay. Don't spend a lot of time distinguishing the cases. We'll read the cases or have. And I would just point out that the Eleventh Circuit case was also, they had stated, knowing and deliberate. So there's, I think, a wide range between this case and those cases. With respect to the, the I.J. did not cite firm resettlement in his decision as a basis for his denial of the asylum claim. So I don't think that's raised at this level. You're right that, Your Honor. I'm sorry. He didn't. I missed what you said. In his oral decision. He didn't raise what? He did not raise the issue of firm resettlement as a basis for his denial. Okay. And finally, the area of speculation. The I.J. speculated about how a mother would be concerned about her baby, how a person who was pregnant would automatically talk about that if they were raped while they were pregnant, how a doctor would have acted in terms of if a rape victim had come to a doctor in Cameroon, how that would have affected the situation, and generally how things, how the family would have been able to procure the arrest warrant. So there's a high level of speculation. And I would just finally note that at the very beginning of the record, the judge notes that he almost applies a higher level of scrutiny to this particular respondent because of her educated, intelligent, sophisticated background. And that is reflected throughout the record with this higher level of scrutiny whenever she gives a one, whenever she omits a detail. And I would note that the cases do not support denial on the basis of a mere omission that is not material to the underlying claim. Okay. Thank you very much, counsel, on both sides. We thank you for your argument. The case just argued is submitted. And we'll move to the next case, which is Salgado Diaz versus Ashcroft. Thank you.
judges: Tashima, Fisher, Tallman